

# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

GUAM MEDICAL PLAZA, L.P.,

    Plaintiff,

vs.

CALVO'S INSURANCE UNDERWRITERS, INC. and MICHAEL D. BROWN, UNDER SECRETARY, FEDERAL EMERGENCY MANAGEMENT AGENCY,

    Defendants.

Civil Case No. 03-00035

MEMORANDUM DECISION AND ORDER TO SHOW CAUSE

    This matter is before the court on a motion to dismiss or in the alternative for summary judgment filed by defendant, Michael D. Brown, Under Secretary, Department of Homeland Security, Federal Emergency Management Agency ("FEMA"). FEMA moves for dismissal for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). The motion was argued and submitted on December 1, 2004. For the reasons stated below, the court grants FEMA's motion to dismiss.[1]

---

[1] Although the court has considered matters outside the four corners of the complaint, this matter is appropriately treated as a motion to dismiss under Rule 12(b)(1) because, as explained below, the proof of loss requirement is a prerequisite to the government's waiver of sovereign immunity, which implicates this court's subject matter jurisdiction. See

For the reasons explained further below, the court also issues an Order to Show Cause ("OSC") why the remaining claims should not be dismissed.

## BACKGROUND

Plaintiff is the owner of real property known as the Guam Medical Plaza, located at 633 Gov. Carlos Camacho St., Block 2 New 3, Tract 10, Tamuning, Guam (the "subject property"). Plaintiff alleges that FEMA wrongfully denied its flood insurance claim under the National Flood Insurance Program ("NFIP"). On June 16, 1998, plaintiff purchased a Standard Flood Insurance Policy ("SFIP") through its agent, Calvo's Insurance Underwriters, Inc. ("Calvo's"), also a defendant in this case. Plaintiff's application requested $500,000.00 in coverage for the contents of the basement of the subject property. The application described these contents as "improvements, including electrical improvements, elevators, transformers, and equipments [sic]." On July 17, 1998, NFIP issued the policy, which the plaintiff renewed annually.

On December 8, 2002, the subject property suffered flood damage as a result of Super Typhoon Pongsona. Thereafter, plaintiff submitted a Notice of Loss to FEMA. By a letter dated January 10, 2003, NFIP acknowledged receipt of plaintiff's Notice of Loss. This letter informed plaintiff that the policy required plaintiff to submit a proof of loss within 60 days of the loss. Four days later, NFIP sent another letter to plaintiff again informing it of the requirement that the proof of loss be filed within 60 days of the loss. That letter also specified February 6, 2003, as the filing deadline, and further warned that failure to file by that date would cause NFIP to "close [its] file without further activity."

On January 14, 2003, Bill Young, an adjuster hired by NFIP, inspected plaintiff's property and determined that there had been a general condition of flooding. He found that 38 inches of water had entered plaintiff's building and had remained there for 24 hours. Despite this finding, Young believed that plaintiff's policy did not cover the claimed damages. Plaintiff claimed damage to the items identified in its insurance application, namely,

---

United States v. Mitchell, 463 U.S. 206, 212 (1983).

2

"improvements, including electrical improvements, elevators, transformers, and equipments." According to Young, however, these items were considered part of the building and were not insured under plaintiff's contents policy, which insured only personal property. Because plaintiff had no personal property in the flooded basement, Young recommended that plaintiff's claim be denied in toto. Young included this recommendation in his final report, which he submitted to NFIP on January 30, 2003, and which he also communicated to plaintiff.

On February 4, 2003, Calvo's sent a letter to NFIP on plaintiff's behalf, contesting Young's findings. Because Young had recommended that coverage be denied, however, plaintiff did not believe that it needed to submit a sworn proof of loss. In a declaration filed with its opposition to FEMA's motion, plaintiff explained this decision as follows:

> On January 14, 2003, Leonard Orloff, a public adjuster hired to assist with Plaintiff's flood claim, met Bill Young of Thorne Claim Service as he inspected the property. That day I was informed that the claim would be denied due to a lack of coverage under the policy. Specifically, I was informed by FEMA's adjusters that Plaintiff had no insurable interest. Plaintiff relied on the statements of FEMA's adjuster that the claim was being denied solely on a lack of coverage. Based upon the denial for lack of coverage and that claim losses would not be considered, Plaintiff thought there was no need to file a sworn proof of loss to fix the amount of the claim because no claim amount would be considered by FEMA.

Ysrael Decl. at ¶ 5.

NFIP issued a letter denying plaintiff's claim on February 12, 2003. That letter informed plaintiff that its claim was being denied because: (1) the building was tenant occupied at the time of the loss and the damaged contents were owned by the tenant; (2) the SFIP, with certain exceptions not relevant to this case, did not cover personal property in a basement; and (3) the damaged items for which plaintiff was claiming coverage were building items (*i.e.*, a part of the building) and plaintiff did not have building coverage.

Plaintiff then contacted its insurance agent, Calvo's, for its assistance. In a memorandum dated February 25, 2003, Calvo's asked the agency to reconsider its decision. Orloff also wrote to the agency on March 14, 2003, in an attempt to persuade the NFIP to change its decision. Orloff stated that plaintiff was seeking compensation for contents, which

3

he identified as "improvements, including electrical, improvements [sic], elevator, transformers, and equipment." Attached to Orloff's letter was an unsworn chart detailing plaintiff's "claim for the damages to the Guam Medical Plaza facility."

On May 20, 2003, the Federal Insurance and Mitigation Administration ("FIMA") determined that denial of the claim was appropriate because there was no coverage under plaintiff's SFIP. FIMA also found, however, that plaintiff's insurance policy had been based upon a mistake. The items that plaintiff had identified in its insurance application would have been insurable as contents if they had been tenant improvements. See 44 C.F.R. Part 61, App. A(2), art. III, § B, (7) (2001). Because, however, plaintiff was the building's owner, the items were considered part of the building and could not be covered by a contents policy. Based upon this mistake, FIMA determined that plaintiff's policy should be nullified from its inception, and the premiums returned to plaintiff. In a May 22, 2003 letter, NFIP notified plaintiff of FIMA's determination.

In a letter dated June 16, 2003, Orloff asked NFIP to reconsider its decision, pointing out that the declarations page of the policy stated that coverage existed for "electrical improvements, elevators, transformers and equipments," the items that plaintiff claimed were damaged. By letter of June 23, 2003, NFIP explained that it would not reconsider its denial because the language quoted by Orloff was not in the Policy Declaration, but in the application, which was construed as a request for coverage for tenant improvements, which would have been available to a tenant, but not to an owner of the building. Because plaintiff was not a tenant, coverage could not be extended for "improvements" listed on the application.

Plaintiff then commenced this action.

### DISCUSSION

FEMA moves to dismiss this action based on lack of subject matter jurisdiction,

contending that there has been no waiver of sovereign immunity.[2] It argues that plaintiff cannot sue FEMA unless and until it has complied with all of the requirements of its insurance policy. See 44 C.F.R. Part 61, App. A(2), art. VII, § R (2001) ("You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy."). Here, as a condition precedent to filing suit, plaintiff was required to submit a signed and sworn proof of loss within 60 days of the loss. The SFIP provides:

> *J. Requirements in Case of Loss*
>
> In case of a flood loss to insured property, you must:
>
> . . . .
>
> 4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn by you, and which furnishes us with the following information:
>
>> a. The date and time of the loss;
>>
>> b. A brief explanation of how the loss happened;
>>
>> c. Your interest (for example "owner") and the interest, if any, of others in the damaged property;
>>
>> d. Details of any other insurance that may cover the loss;
>>
>> e. Changes in title or occupancy of the covered property during the term of the policy;
>>
>> f. Specifications of damaged buildings and detailed repair estimates;
>>
>> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>>
>> h. Details about who occupied any insured building at the time of the loss and for what purpose; and
>>
>> i. The inventory of damaged property described in J.3. above.

---

[2] FEMA also contends this action should be dismissed because plaintiff's SFIP did not cover the property that was damaged. In light of our conclusion that this court lacks subject matter jurisdiction, we do not reach the coverage issue.

5

44 C.F.R. Part 61, App. A(2), art. VII, § J (2001).

The proof of loss requirement is a condition precedent to a waiver by the government of its sovereign immunity. Wagner v. Director, Fed. Emergency Mgmt. Agency, 847 F.2d 515, 518 (9th Cir. 1988). "Because waivers of sovereign immunity are construed narrowly . . . the conditions of an insurance policy offered pursuant to a congressionally mandated program, such as the NFIP, must be strictly observed." Id. (citations omitted); see also Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386, 390 (9th Cir. 2000) ("Federal law has long recognized that an insured must comply strictly with the terms and conditions of a federal insurance policy."). The reason for such strict compliance is that the Constitution's Appropriations Clause "preclude[s] a court from granting a remedy that draws funds from the Treasury in a manner that is not authorized by Congress." Id. at 391.

It is undisputed that plaintiff failed to file a sworn proof of loss within 60 days of its loss. It is also undisputed that FEMA did not provide plaintiff with a written waiver of the proof of loss requirement. See 44 C.F.R. Part 61, App. A(2), art. VII, § D (2001) ("This policy cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action we take under the terms of this policy can constitute a waiver of any of our rights."). Plaintiff argues, however, that FEMA should be equitably estopped from asserting this defense due to its failure to raise the proof of loss defense when it denied plaintiff's claim. This argument is foreclosed by Flick. A claimant can "avoid strict enforcement of the 60 day sworn proof of loss requirement" only in one manner: a valid waiver by the Federal Insurance Administrator. Flick, 205 F.3d at 391; see also Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 426 (1990) ("[J]udicial use of the equitable doctrine of estoppel cannot grant [a claimant] a money remedy that Congress has not authorized.").

Even if estoppel were available, however, it would not apply here. To establish estoppel, a litigant must show, among other requirements, both a misrepresentation by another party and reasonable reliance on that misrepresentation. See Heckler v. Cmty. Health Serv.,

6

Inc., 467 U.S. 51, 59 (1984) (quoting Restatement (Second) of Torts § 894(1) (1979)); see also Wagner, 847 F.2d at 519 ("A party seeking to raise estoppel against the government must establish 'affirmative misconduct going beyond mere negligence'; even then, 'estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.'" (citations omitted)). Plaintiff has not shown that FEMA's conduct amounts to affirmative misrepresentation. While plaintiff believed that the filing of a sworn proof of loss was unnecessary, there was no affirmative misrepresentation by any government employee that plaintiff did not need to file one.[3] In fact, plaintiff was directly told in correspondence from FEMA that such a filing was needed. Moreover, the proof of loss requirement is plainly set forth in the policy, and the SFIP was published in the Code of Federal Regulations. See 44 C.F.R. Part 61, App. A(2) (2001). As noted by the Supreme Court, "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." Heckler, 467 U.S. at 63 (footnote omitted); see, e.g., Wagner, 847 F.2d at 519-20 (FEMA's failure to raise the issue of proofs of loss after becoming aware of and investigating damages was not affirmative misconduct.); Phelps v. Fed. Emergency Mgmt. Agency, 785 F.2d 13, 18-19 (1st Cir. 1986) (refusing to apply estoppel against FEMA despite the insureds' reasonable reliance on FEMA's agents' erroneous misrepresentations that they need not file a proof of loss.).

Nor was plaintiff's reliance on Young's statements reasonable. Although Young informed plaintiff that he believed plaintiff's policy did not cover its claimed losses, the SFIP

---

[3] Plaintiff contends that Young, the independent adjuster retained by FEMA was the government agent who made the misrepresentation that, in effect, it would be a useless act to file a sworn proof of loss. According to the policy provisions, however, FEMA has "not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim." 44 C.F.R. Part 61, App. A(2), art. VII, § J(8) (2001). Section J(7) also provides that "you must still send us a proof of loss within sixty days after the loss even if the adjuster does not furnish the form or help you complete it." Thus, in these circumstances, Young cannot be regarded as the government's agent with the authority to make a representation binding on FEMA.

7

specifically states that "[w]e have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim." 44 C.F.R. Part 61, App. A(2), art. VII, § J(8) (2001). Plaintiff's decision to forego filing a proof of loss, based upon these statements that did not reflect the NFIP's final decision, was therefore unreasonable.

Because plaintiff failed to submit a written proof of loss in connection with its claims, it has failed to satisfy the prerequisites to suit under the SFIP. Accordingly, the government has not waived its sovereign immunity. The court therefore lacks subject matter jurisdiction of this action, as against FEMA.

## CONCLUSION

For the reasons stated herein, FEMA's motion to dismiss for lack of subject matter jurisdiction is granted and this action is DISMISSED as against defendant FEMA.

## ORDER TO SHOW CAUSE

Plaintiff's remaining claims are against defendant Calvo's. It is apparent from the complaint that the remaining parties are not diverse. In the Ninth Circuit, it appears that sovereign immunity implicates the court's subject matter jurisdiction. See Orff v. United States, 358 F.3d 1137, 1149 (9th Cir.), cert. granted, 125 S. Ct. 309 (2004).[4] The court recognizes, however, that there is some tension in Ninth Circuit case law on whether sovereign immunity really implicates subject matter jurisdiction. See Powelson v. United States, 150 F.3d 1103, 1105 (9th Cir. 1998) (holding that "[s]overeign immunity is grounds for dismissal independent of subject matter jurisdiction"). It is not for this court to resolve this apparent inconsistency. The court does note that, even if subject matter jurisdiction is not implicated by the dismissal of the FEMA claim on grounds of sovereign immunity, it still retains jurisdiction to dismiss the remaining non-federal claims under 28 U.S.C. § 1367(c).

Plaintiff therefore shall show cause why its remaining claims against Calvo's should not be dismissed without prejudice either for lack of subject matter jurisdiction under Orff, or in the

---

[4] The issue on which certiorari was sought does not appear to implicate the sovereign immunity/subject matter jurisdiction issue.

8

exercise of this court's discretion under § 1367(c). Plaintiff's written return to this OSC shall be filed and served by December 31, 2004; Calvo's response shall be filed and served by January 21, 2005; any optional reply shall be filed and served by February 4, 2005, on which date this OSC shall stand submitted for decision.

Pending the resolution of this OSC, the discovery cutoff date is extended to March 25, 2005; the motion cutoff date is extended to April 15, 2005; the preliminary pretrial conference is continued to May 10, 2005, at 2:00 p.m.; and the final pretrial conference is continued to June 7, 2005, at 2:00 p.m.

Dated: Dec. 10, 2004.

_____
A. WALLACE TASHIMA*
United States Circuit Judge

---

*The Honorable A. Wallace Tashima, United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

9